IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal No. 2:10-CR-562-DCN |
| vs. ) | |
| ) | |
| WILLIE MITCHELL, ) | **ORDER AND OPINION** |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the court on defendant's pro se motion to suppress.[1] Defendant argues that a search warrant which led to the seizure of a gun, cocaine, crack cocaine ("crack"), items containing drug residue, and a sum of United States currency, was improperly issued, not supported by adequate investigation, and improperly executed. The government filed a response in opposition, and the court held a suppression hearing on May 31, 2011. For the reasons set forth below, the court denies defendant's motion.

## I. BACKGROUND

Prior to December 14, 2009, the North Charleston Police Department Narcotics Unit received information that illegal drug activity was taking place at 2321 Kent Avenue, North Charleston, South Carolina. In the early morning hours of December 14, 2009, two detectives corroborated the tips by conducting a trash pull at the residence. The detectives discovered clear plastic bags containing suspected cocaine and crack residue, two empty boxes of baking soda, a small quantity of suspected marijuana, and a phone bill addressed to Kenyatta Thompson at 2321 Kent Avenue, prompting them to

---

[1]Defendant filed this pro se motion, despite the fact that he is represented by a court-appointed attorney.

apply for a search warrant.

On December 21, 2009, the Narcotics Unit, along with other officers, executed the search warrant. The officers found defendant in a bathroom, an adult female in a bedroom, and several juveniles in another bedroom. During the search of the residence, officers found "a .40 caliber handgun, .07 grams of cocaine, 4.32 grams of cocaine base, a digital scale with white powder residue, three pyrex dishes with white powder residue, a microwave with white residue, $1,639 in U.S. currency and documents with the defendant's name on them." Resp. Opp'n 2. According to the government, "defendant gave a post-<u>Miranda</u>[2] statement claiming ownership of the gun and drugs, stating that he had the drugs to sell." Id.

On May 12, 2010, a federal grand jury indicted defendant for: (1) being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e); (2) possessing with intent to distribute a quantity of crack, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

On February 10, 2011, defendant filed the instant pro se motion to suppress the evidence seized from his residence. Defendant first claims that the search warrant should not have been issued because Detective Jamel Foster "willfully and purposely withheld important information that could have eliminated the 'good faith c[l]ause.'" Mot. Suppress 1. In support, he argues that there are actually two residences located at 2321

---

[2]<u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

Kent Avenue, and once the trash can is placed on the curb, it is not "easily accessible" by anyone in defendant's residence and "would be impossible for anyone within [his] home to monitor." Id. He adds that a fence surrounds the yard on the property. He also argues that Detective Foster failed to inform the municipal judge that a public bus stop and two school bus stops are in close proximity to the trash can when it is placed on the curb. Defendant questions whether the officers actually seized anything from his trash, or whether someone else put something in his trash and directed the officers to his trash can. Defendant also requests a copy of a case that discusses the "passerby theory," or in other words, according to defendant, the theory that officers cannot conduct "surveillance" on a trash can before it is placed on the curtilage. Id. at 3.

Defendant's second argument is that the probable cause for the search warrant was not supported by adequate investigation on the part of the officers. Defendant references without citation the case of United States v. Tate and asserts that according to Tate, three requirements must be satisfied prior to obtaining and executing a search warrant: (1) a copy of the informant's statement, along with his/her name and address, must be in the incident report; (2) the criminal record of the suspect must be provided; and (3) a "letterhead" with the name of someone in the residence must be provided. Mot. Suppress 1-2. Defendant asserts that the incident report for the search warrant does not show that officers attempted to investigate the tip or observed anyone going to or from the residence; therefore, there is no evidence indicating wrongdoing by defendant. In addition, defendant has requested that the items allegedly seized from his trash be fingerprinted and that he receive a copy of the "informant's or 'unknown source's'

statement." Id. at 2.

Finally, defendant challenges the execution of the search warrant. According to defendant, when the officers entered his home, he and his girlfriend asked repeatedly "where the warrant . . . was." Id. According to defendant, Detective Foster told them that the warrant was on its way, and the search warrant arrived at the residence approximately one and a half hours later, after the evidence had been seized and after defendant gave and signed a statement. Defendant claims that the officers violated his rights by not presenting a copy of the warrant when they entered his residence.

On March 15, 2011, the government filed a response in opposition. The government argues that the search warrant was supported by probable cause. The officers received a tip, which they corroborated by conducting a trash pull. The trash pull revealed evidence of drug packaging and distribution, and they also seized discarded mail bearing defendant's address—2321 Kent Avenue. The government argues that "this is certainly enough for a judge to find probable cause that the residence would hold further evidence of illegal drug sales" and the officer's failure to disclose that a bus stop was located nearby does not affect the sufficiency of the probable cause. Resp. Opp'n 3.

The government states that it was unable to locate the Tate case referenced by defendant and it is unfamiliar with any such requirements that must be satisfied prior to obtaining a search warrant. The government argues that defendant's request for fingerprinting of evidence and a copy of any informants' statements are discovery issues and not grounds for suppression of the search warrant.

The government argues that execution of the search warrant was proper. The government argues that while Federal Rule of Criminal Procedure 41(f)(1)(C) requires an officer to give a copy of the warrant and a receipt of the seized property to the person from whom, or from whose premises, the property was taken, or to leave a copy of the warrant and receipt at the place where the officer took the property, there is no requirement that a person be given a copy of a search warrant before the search begins.

On May 31, 2011, this court held a suppression hearing. The court received various photographs, defendant's Miranda statement, and the state search warrant and related affidavit as court exhibits. The court also admitted for identification purposes only the seized drug residue, clear plastic bags, mail addressed to Kenyatta Thompson, and two boxes of Arm & Hammer baking soda. North Charleston Police Department ("NCPD") Detectives Jamel Foster and Cindy Bordallo, North Charleston Public Works employee Eno Ritari, and Ms. Kenyatta Thompson testified at the hearing.

According to Detective Foster's testimony, approximately two days before conducting the trash pull at 2321 Kent Avenue, he received a call from a uniformed patrol officer who had arrested two individuals for possession of drugs. The patrol officer relayed that the two arrested individuals provided drug-related information regarding the residence at 2321 Kent Avenue. They also said that a "Kenyatta," who drove a green vehicle, lived at that residence with her boyfriend, "Black." Suppression Hr'g Tr. 6:20-23, May 31, 2011. One day prior to the trash pull, Detective Foster also received information from a reliable confidential source, one utilized by the NCPD Narcotics Unit for approximately ten years, that an individual was cooking crack at the Kent Avenue

residence. Detective Foster then checked the tax records for the residence at 2321 Kent Avenue to determine whether the detached garage/apartment behind the residence had a different address. He also contacted an NCPD communications officer to determine whether officers had previously responded to any calls at the main residence or the detached garage/apartment. The tax records did not show a separate address for the detached garage/apartment, and there were no previous calls for police assistance at 2321 Kent Avenue. Both Detective Foster and Detective Bordallo testified that they observed a trash can inside the fence next to the detached garage/apartment. This trash can was not seized during the trash pull.

Detective Foster testified that he and Detective Bordallo conducted the trash pull between 2:00 a.m. and 4:00 a.m. on December 14, 2009. He testified that he conducted the trash pull at night to avoid detection, taking the entire trash can and leaving another city-issued trash can in its place. Detective Foster stated that the trash can was on the Accabee Road side of the residence, outside of the fenced-in backyard, on the street. Detective Foster testified that he and Detective Bordallo found two empty boxes of Arm & Hammer baking soda, clear plastic bags containing residue that field-tested positive for the presence of cocaine, a T-Mobile phone bill addressed to Kenyatta Thompson at 2321 Kent Avenue, and an advertisement addressed to 2321 Kent Avenue. Detective Foster testified that he obtained a search warrant from a state magistrate later on that same date based on the items found in the trash.

Detective Foster stated that he continued his investigation by conducting surveillance in the area of 2321 Kent Avenue. During the surveillance, he saw defendant

get into a green car registered to Ms. Thompson.

On December 21, 2009, Detective Foster and other officers, including the NCPD SWAT team, executed the search warrant at 2321 Kent Avenue. Detective Foster admitted that he left the search warrant and all of his paperwork on his desk prior to the execution of the warrant, but once the residence was secured, another officer drove Detective Foster to his office, so that he could retrieve the paperwork. Detective Foster returned to 2321 Kent Avenue roughly twenty minutes later, while the search was ongoing. Detective Foster testified that at the time entry was made by the NCPD SWAT team, defendant, Ms. Thompson and several minor children were present. The officers seized a stolen .40 caliber Glock handgun, clear plastic bags containing 0.3 grams of suspected cocaine, a clear plastic bag containing six grams of an "off-white rock-like substance" believed to be crack, documents in defendant's name and Kenyatta Thompson's name, three Pyrex dishes and two whisks containing residue that field-tested positive for the presence of cocaine, two boxes of Arm & Hammer baking soda, and $1,639 in United States currency that defendant voluntarily surrendered to the NCPD. Suppression Hr'g Tr. 17:17-25, May 31, 2011. Detective Foster stated that chemical analyses performed by the South Carolina Law Enforcement Division ("SLED") confirmed that the substances found were cocaine and crack. In addition, Detective Foster stated that the boxes of Arm & Hammer baking soda matched those previously found during the trash pull, as all of the box tops had similar red $0.79 price tags.

According to Detective Foster, another officer read the Miranda rights to defendant, and defendant signed a waiver form and gave a written statement

(Government's Exhibit 5). In the statement, defendant claimed responsibility for the gun and the drugs found at 2321 Kent Avenue and stated that he showed officers where to find the drugs. Detective Foster testified that he left a copy of the search warrant return at the residence following the search.

Detective Bordallo testified that she assisted Detective Foster in seizing the trash at 2321 Kent Avenue in the early morning hours of December 14, 2009. She also testified that she assisted in the search of the trash and witnessed the drug field tests conducted by Detective Foster. She stated that Detective Foster took custody of the evidence and logged the exhibits into the NCPD evidence room.

North Charleston Public Works employee Eno Ritari, a garbage truck driver, testified that his garbage collection route in December 2009 included the area encompassing Kent Avenue and Accabee Road. He testified that he and his crew would meet at approximately 5:30 a.m. each morning and start garbage pick-up at approximately 6:00 or 6:15 a.m. He stated that he was familiar with the residence located at 2321 Kent Avenue, that he would pick up the trash in that area between 7:00 and 8:00 a.m., and that the trash was located outside the back gate, by the driveway, on the Accabee Road side of the residence. Mr. Ritari testified that a school bus stop was located nearby on Kent Avenue, and he usually tried to pick up the trash at this location before the school bus arrived to avoid any interference with the school bus schedule.

Ms. Kenyatta Thompson testified that she was living at 2321 Kent Avenue with her three children and defendant in December 2009. Ms. Thompson testified that the detached garage/apartment was a separate residence occupied by an older gentleman, who

used a different trash can than the one she used for her residence. Ms. Thompson said that it was her son's assigned chore to take out the trash. She testified that he would occasionally take it out on Sunday night, the night before pick-up, but he would often forget and take out the trash on Monday morning before school.

During cross-examination, Ms. Thompson gave contradictory testimony regarding whether her son took out the trash on the night of December 13, 2009, or the morning of December 14, 2009. At first, she stated that he was supposed to take out the trash on Sunday evenings, which he occasionally did, and then she stated that he "always put it out on Monday morning." Suppression Hr'g Tr. 71:25-72:8, May 31, 2011. Ms. Thompson admitted that she did not keep a record of when her son took out the trash on Sunday nights as opposed to Monday mornings, but she claimed that on December 14, 2009, her son definitely took out the trash on Monday morning, before going to school.

Ms. Thompson testified that during the execution of the search warrant on December 21, 2009, she asked the officers for a copy of the search warrant, but they instructed her to be quiet. She stated that the officers showed her a copy of the warrant after they read her <u>Miranda</u> rights, but before they left her residence. Ms. Thompson also testified that she signed a written statement in which she stated that all of the illegal items found in the house belonged to defendant.

## II. DISCUSSION

The Fourth Amendment to the United States Constitution states that

> [t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or

> affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV. "Probable cause exists where 'the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." Brinegar v. United States, 338 U.S. 160, 175-76 (1949) (quoting Carroll v. United States, 267 U.S. 132, 162 (1925)). "In determining whether a search warrant is supported by probable cause, the crucial element is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched." United States v. Lalor, 996 F.2d 1578, 1582 (4th Cir. 1993) (citing Zurcher v. Stanford Daily, 436 U.S. 547, 556, 557 n.6 (1978)).

> In [United States v. Anderson, 851 F.2d 727 (4th Cir. 1988)], this court adopted the rule that "the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." Id. at 729. The court held that probable cause can be inferred from the circumstances, and a warrant is not invalid for failure to produce direct evidence that the items to be seized will be found at a particular location.

Lalor, 996 F.2d at 1582 (citation omitted).

The determination of whether probable cause exists to issue a warrant rests with "a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." Johnson v. United States, 333 U.S. 10, 14 (1948). "An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause." Illinois v. Gates, 462 U.S. 213, 239

(1983).  "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others."  Id.  "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."  Id. at 245 n.13.  It is also important to recognize that "[a] magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'"  Id. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)).

The court was able to locate numerous cases in various circuits with the case title "United States v. Tate," but the court presumes that defendant refers to United States v. Tate, 524 F.3d 449 (4th Cir. 2008).[3]  That case does not require the three items listed by defendant; however, it does provide useful guidance concerning defendant's claim that the search warrant should not have been issued because the applying officer withheld information from the municipal judge, including the facts that the trash can was not easily accessible by anyone at his residence once it was placed on the curb and that a public bus stop, as well as two school bus stops, were located nearby.

In Tate, a Baltimore City Police Department officer applied for and obtained a search warrant to search Tate's residence for drugs and related items.  Id. at 450-51.  The search warrant application was based on a trash pull conducted by the officer, in which he discovered baggies containing suspected marijuana, hollowed out cigars, and mail bearing Tate's address.  Id. at 451.  During the execution of the search warrant, officers located a

---

[3]This issue was not clarified by defendant during the course of the suppression hearing.

gun in the residence and charged Tate with being a felon in possession of a firearm. Id. Tate unsuccessfully requested that the district court grant a Franks[4] hearing and his motion to suppress. Id. He subsequently pled guilty, and the court sentenced him to seventy-eight months in prison. Id. Tate's plea agreement allowed him to appeal the district court's denial of a Franks hearing and his motion to suppress; therefore, he appealed those issues to the Fourth Circuit. Id. at 451, 453. Tate claimed that the officer applying for the search warrant intentionally misled the state judge who issued the warrant "by deliberately *omitting* facts about the location of the trash." Id. at 451 (emphasis in original). Tate offered evidence that the trash was not abandoned and in a public place, rather, it was located near the back steps of his house, within his fenced-in backyard. Id. at 451-52. Tate was also able to show that the officer omitted language he used in another search warrant affidavit that was similarly based on the results of a trash pull. Id. at 456. In that affidavit, unlike the affidavit submitted in Tate's case, the officer described the trash as being "at the typical location for pick-ups." Id. Thus, the other affidavit revealed that the officer was aware of the requirements for a valid trash search, yet he omitted this information in Tate's case. Id. The Fourth Circuit held:

> As we explained in [United States v. Colkey, 899 F.2d 297 (4th Cir. 1990)], an affidavit offered to procure a search warrant "cannot be expected to include . . . every piece of information gathered in the course of an investigation." Id. at 300. And because every piece of information cannot be expected to be included, the very process of selecting facts to include for the demonstration of probable cause must also be a deliberate process of omitting pieces of information. Certainly, such intentional omissions do not satisfy the requirement of Franks. As we stated in Colkey, "If, as the district court held, this type of 'intentional' omission is all that Franks requires, the Franks

---

[4]Franks v. Delaware, 438 U.S. 154 (1978).

> intent prerequisite would be satisfied in almost every case." Id. Accordingly, merely showing an intentional omission of a fact from a warrant affidavit does not fulfill Franks' requirements. See id. at 301; see also United States v. Shorter, 328 F.3d 167, 170-71 (4th Cir. 2003).
>
> To satisfy the Franks intentional or reckless falsity requirement for an *omission*, the defendant must show that facts were omitted "with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading." Colkey, 899 F.2d at 300 (internal quotation marks omitted). Stated otherwise, the omission must be "*designed to mislead*" or must be made "*in reckless disregard of whether [it] would mislead*." Id. at 301.

Tate, 524 F.3d at 455 (emphasis in original). The Fourth Circuit found that Tate "carried his burden of making a substantial preliminary showing that [the officer] knowingly and intentionally, or with reckless disregard for the truth, omitted a material statement in the affidavit he offered in support of the warrant to search Tate's residence." Id. at 457. The Fourth Circuit then vacated Tate's conviction and remanded the case for a Franks hearing. Id.

Unlike Tate, defendant in the instant case has asserted that the trash was on a curb and in a public place, which is accessible by people using one of several bus stops.[5] The thrust of defendant's first argument is that the officer applying for the search warrant failed to inform the municipal judge that a public bus stop and two school bus stops were located nearby and that members of the public had access to the trash can. Obviously, if the trash can is in a public place, members of the public, or passers-by, would have access

---

[5]In his motion, defendant indicates that the trash can was located *outside* the fence surrounding his yard; he stated that it was not easily accessible by anyone in his residence and could not be easily monitored. The testimony of Detective Foster, Detective Bordallo, and Mr. Ritari also reflect that the trash can was located outside the fence at 2321 Kent Avenue. Only the testimony of Ms. Thompson alludes to the possibility that the trash can was on the curtilage of 2321 Kent Avenue at the time of the trash pull; however, her testimony on this point was clearly inconsistent.

to it; however, the officer's omission of the fact that bus stops are located nearby is no more an omission of material fact than his failure to tell the municipal judge the number of cars that pass by the trash can when traveling down defendant's street on any given trash pick-up day.

At the suppression hearing, defendant failed to provide any evidence indicating that the officer intentionally or recklessly omitted a material fact when applying for the warrant; therefore, there is no merit to defendant's arguments that the search warrant was unsupported by probable cause or invalidly issued. In the seized trash, the officers found clear plastic baggies containing a white powder residue and a white rock like substance residue, both of which field-tested positive for cocaine. They also found mail addressed to defendant's residence. Moreover, the testimony of defendant's own witness, Ms. Thompson, confirmed the testimony of Detectives Foster and Bordallo, in that the main residence at 2321 Kent Avenue and the detached garage/apartment used separate trash cans. Accordingly, the municipal judge had a substantial basis for concluding probable cause existed to search defendant's residence. As for defendant's request for case law on the "passerby theory," any requests for case law by defendant should be made to defense counsel and not the court.

Likewise, with regard to defendant's second argument, there is absolutely no merit to the assertion that Tate requires the three items listed in his motion. Defendant claims that the detectives failed to investigate the tips regarding drug activity at 2321 Kent Avenue and did not see anyone going to or from the residence. However, the testimony and court exhibits established that the probable cause for the search warrant

was predicated on the evidence seized from the trash pull and not a tip from a confidential informant or an anonymous tip. As for having items fingerprinted or receiving copies of statements, defendant should address those issues with defense counsel during the discovery and defense preparation processes.

Defendant's final challenge regarding the execution of the search warrant must also fail. The search warrant at issue was obtained pursuant to South Carolina law. South Carolina Code of Laws § 17-13-150 states that "[w]hen any person is served with a search warrant, such person shall be furnished with a copy of the warrant along with the affidavit upon which such warrant was issued"; however, the statute does not specify that the person shall be provided with a copy of the warrant prior to the execution of the search. In reference to federal search warrants, the Supreme Court has held that "neither the Fourth Amendment nor Rule 41 of the Federal Rules of Criminal Procedure requires the executing officer to serve the warrant on the owner *before* commencing the search." Groh v. Ramirez, 540 U.S. 551, 562 n.5 (2004) (emphasis added). Federal Rule of Criminal Procedure 41(f)(1)(C) simply states that "[t]he officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property." The officers executing the search warrant had no legal obligation to show defendant a copy of the search warrant when they entered his residence. Defendant admitted that he was unable to produce any state or federal case law stating otherwise.

As a final matter, the court addresses an argument raised by defendant during the suppression hearing. Defendant contended that the incident report for the trash pull shows that the detectives conducted the trash pull at 9:38 a.m. on December 14, 2009. This argument is without merit because the testimony of the detectives demonstrated that the time on that report was generated automatically by a computer when the NCPD communications department issued a case number for the report and corresponding evidence. Furthermore, the court finds no validity in the assertion that the officers attempted to conduct an investigative trash pull at approximately 9:30 a.m., in broad daylight, approximately one and a half to two and a half hours after the trash is normally collected.

### III.  CONCLUSION

For the reasons set forth above, the court **DENIES** defendant's motion to suppress.

**IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**CHIEF UNITED STATES DISTRICT JUDGE**

**August 3, 2011**
**Charleston, South Carolina**